UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

**CIVIL ACTION NO. 16-165-DLB**

**MELORIS AIELEEN BAKER**                                            **PLAINTIFF**

vs.                      **MEMORANDUM OPINION AND ORDER**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                               **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, hereby affirms the decision of the Commissioner.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On July 1, 2013, Plaintiff Meloris Aieleen Baker protectively applied for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) payments, alleging disability beginning on July 1, 2013. (Tr. 10, 42, 53). Plaintiff's application was denied initially and again on reconsideration. (Tr. 91-94, 97-110). At Plaintiff's request, an administrative hearing was conducted on April 23, 2015, before Administrative Law Judge ("ALJ") Don C. Paris. (Tr. 21-41). On May 21, 2015, ALJ Paris ruled that Plaintiff was not entitled to disability benefits. (Tr. 10-16). This decision became final when the Appeals Council denied Plaintiff's request for review on March 25, 2016. (Tr. 1-5). Plaintiff filed the instant action on May 27, 2016. (Doc. # 1). The matter has culminated

1

in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 12 and 13).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the court is required to affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if it might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

To determine disability, the ALJ conducts a five-step analysis. "If, at any step during the process, it is determined that the claimant is or is not disabled, the process is terminated." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 928-29 (6th Cir. 2007). Step One considers whether the claimant can still perform substantial gainful activity;

Step Two, whether any of the claimant's impairments, alone or in combination, are "severe;" Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

ALJ Paris began the sequential evaluation by determining at Step One that the Plaintiff has not engaged in substantial gainful activity since her alleged onset date of July 1, 2013. (Tr. 12). At Step Two, the ALJ determined that Plaintiff does not have a severe impairment or combination of impairments that has "significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." (Tr. 13-15). Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the decision. (Tr. 15-16).

### C. Analysis

Plaintiff alleges the ALJ erred by terminating the sequential evaluation at Step Two and asks the Court to reverse and remand the disability determination. (Doc. # 12-1 at 1). Specifically, Plaintiff argues that the record supports the conclusion that she suffered from a "severe" impairment or combination of impairments because she has been

3

"diagnosed with bilateral carpal tunnel syndrome, degenerative changes in her back, and perhaps [has] rheumatoid arthritis." *Id*. Plaintiff also claims that the "ALJ failed to consider whether [her] carpal tunnel syndrome and lumbar spine degeneration, in combination, specifically limited her physical ability to do basic work activities." *Id*.

### *1. The ALJ applied the correct legal standard at Step Two.*

The Plaintiff makes two arguments regarding the ALJ's application of the legal standard for Step Two. First, Plaintiff claims that the ALJ "did not address the issue of rheumatoid arthritis in his decision." (Doc. # 12-1 at 3-4). The record belies this assertion.

Step Two involves two related inquiries. Initially, the ALJ must identify a claimant's medically determinable impairments. 20 C.F.R. § 404.1521. To establish a medically determinable impairment, the claimant must present proof of a "physical or mental impairment" that can "be established by objective medical evidence from an acceptable medical source." *Id*. Therefore, there must be evidence of the impairment "shown by medically acceptable clinical and laboratory diagnostic techniques." *Id*. The ALJ will not rely on a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id*. Finally, and only after the claimant establishes that they "have a medically determinable impairment(s)," the ALJ considers "whether [the claimant's] impairment(s) is severe." *Id*. Here, the ALJ concluded that "the medical evidence of record [did] not support medically determinable impairments related to" arthritis. (Tr. 13). Therefore, the ALJ did not analyze whether Plaintiff's potential arthritis was "severe."

In support of her argument that the ALJ "did not address the issue of rheumatoid arthritis in his decision," the Plaintiff cites to November 2014 records from the University

4

of Kentucky's Neuroscience Institute. (Doc. # 12-1 at 3) (citing Tr. 291-296 ("Exhibit 6F")). Those records indicate a possible diagnosis of arthritis and recommend "labs to rule out other confounding factors, bilateral wrist x-rays to assess RA affect, and referral to Rheum[atologist] for evaluation and treatment of RA." (Tr. 294; "Exhibit 6F", p. 4). Plaintiff's counsel apparently believes that Medicaid "did not approve these further tests" and thus, "they were not done." (Doc. # 12-1 at 4). However, that testing did occur, and the ALJ relied on that testing in refusing to consider Plaintiff's "possible" arthritis as a medically determinable impairment. (Tr. 283-290; "Exhibit 5F", p. 1-8).

Contrary to the Plaintiff's argument, the ALJ specifically considered Plaintiff's "possible [diagnosis] of rheumatoid arthritis." (Tr. 13). However, there was no conclusive diagnosis for Plaintiff's "possible" arthritis – diagnostic imaging studies and laboratory tests all proved to be within normal limits. Relying on the February 2015 medical records from the University of Kentucky's Department of Rheumatology (Tr. 283-290; "Exhibit 5F", p. 1-8), the ALJ determined that Plaintiff's "possible" arthritis did not constitute a medically determinable impairment because "examinations have not included any tenderpoint inventory, and x-rays of the claimant's hands and wrists … showed no erosive changes." (Tr. 13). Likewise, testing "found normal c-reactive protein and sedimentation rate." *Id.* (citing "Exhibit 5F").[1] Therefore, the ALJ concluded that "the medical evidence of record [did] not support medically determinable impairments related to" arthritis. *Id.* The record

---

[1] Arthritis is the subject of two Listings of Impairment found in Appendix 1 of Subpart B of Part 404 of the federal regulations: 1.02 (Musculoskeletal Impairments – Major dysfunction of a joint(s)) and 14.09 (Immune System Disorders – Inflammatory Arthritis). Both listings note the medical evidence which supports such impairments – "appropriate medical imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s)." These are the very tests detailed in Exhibit 5F, which the ALJ relied on in concluding that Plaintiff did not have a medically determinable impairment of arthritis.

5

evidence supports the ALJ's factual determination.

Second, the Plaintiff argues that the ALJ "failed to consider whether [Plaintiff's] carpal tunnel syndrome and lumbar spine degeneration, *in combination*, significantly limited her physical ability to do basic work activities." (Doc. # 12-1 at 1, 9-10) (emphasis added). This argument is similarly flawed.

The Act requires the ALJ to "consider the combined effects of impairments that individually may be non[-]severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988) (citing 42 U.S.C. § 423(d)(2)(C)). Plaintiff claims that the ALJ failed to undertake such an analysis, but this claim is dispelled by the record.

Throughout her decision, the ALJ held that Plaintiff's "impairments, *considered singly and in combination*, do not significantly limit [her] ability to perform basic work activities." (Tr. 15) (emphasis added). Thus, the ALJ concluded that Plaintiff "does not have a severe impairment or *combination of impairments*." *Id*. (emphasis added); *see also* (Tr. 13) ("In reaching the conclusion that the claimant does not have an impairment or *combination of impairments* that significantly limits her ability to perform basic work activities …") (emphasis added). In sum, the ALJ "properly applied the applicable law regarding consideration of a claimant's impairments in combination, and [Plaintiff's] claim that the [ALJ] failed to evaluate her impairments in combination is without merit." *Foster*, 853 F.2d at 490 (holding similar language demonstrated sufficient consideration of the combination of impairments).

Accordingly, the ALJ set forth and applied the correct legal standard at Step Two. (Tr. 11, 13-15). Therefore, the question for review is whether substantial evidence

supports the ALJ's findings. If so, the Court "must defer to [that] decision, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Jones*, 336 F.3d at 474.

### 2. Substantial evidence supports the ALJ's decision.

The Plaintiff claims that the ALJ's decision to deny the claim at Step Two "was made contrary to law, and without substantial factual support in the record." (Doc. # 12-1 at 8). Specifically, the Plaintiff argues that the ALJ did not make a "careful evaluation of the medical findings" or an "informed judgment" about how Plaintiff's impairments affect her ability to do basic work activities. *Id.* In response, the Commissioner claims that "the record as a whole supported the ALJ's reasonable determination that, while Plaintiff had the medically determinable impairments of degenerative disc disease and carpal tunnel syndrome, those impairments – either alone or in combination – were not severe." (Doc. # 13 at 3).

The Sixth Circuit has characterized Step Two "of the disability determination process as a '*de minimis* hurdle.'" *Despins*, 257 F. App'x at 929 (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). However, "a claim may be dismissed at [Step Two] if it is determined that the claim is 'totally groundless solely from a medical standpoint.'" *Id.* (quoting *Higgs*, 880 F.2d at 863). Although the "vast majority of cases" may not be dismissed without consideration of a claimant's vocational factors, "Congress [nevertheless] has approved the threshold dismissal of claims obviously lacking medical merit, because in such cases the medical evidence demonstrates no reason to consider age, education, and experience." *Higgs*, 880 F.2d at 862-63 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)). Accordingly, dismissal at Step Two is entirely appropriate as

a means to "screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)).

To clear "the [Step Two] hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act, on or prior to the date that the applicant was last insured." *Despins*, 257 F. App'x at 929. Disability is defined "as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Id.* (quoting 42 U.S.C. § 423(d)(1)(A)). "The Social Security regulations interpret § 423(d)(1)(A) to require the existence of a 'severe' impairment – that is, 'any impairment or combination of impairments which significantly limits [the claimant's] ability to do basic work activities.'"[2] *Id.* (quoting 20 C.F.R. § 404.1522(a)). Therefore, an "impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862.

Here, the ALJ concluded that Plaintiff did not suffer from a severe impairment or combination of impairments that has "significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." (Tr. 13-15). After considering the medical evidence in the record and the testimony of Plaintiff,

---

[2] "Basic work activities" include "the abilities and aptitudes necessary to do most jobs," including but not limited to: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1522(b).

8

the ALJ determined that Plaintiff suffers from three medically determinable impairments: degenerative disc disease of the lumbar spine, carpal tunnel syndrome, and depression.[3] (Tr. 13). However, the ALJ found that those "impairments, considered singly and in combination, do not significantly limit the [Plaintiff's] ability to perform basic work activities," and thus, are not severe. (Tr. 14). Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 15). That conclusion is supported by substantial evidence.

### a. The Medical Evidence

In social security disability cases, the Commissioner depends on medical sources "to provide evidence, including opinions, on the nature and severity of a [claimant's] impairment(s)." 20 C.F.R. § 404.1527(d)(2). Such evidence may come from treating sources, non-treating sources, and/or non-examining sources. *See* 20 C.F.R. §§ 404.1527(a)-(c). In this case, Plaintiff's medical records consist of both treating and non-treating sources. The Court will briefly summarize the medical evidence Plaintiff submitted in support of her disability claim.

Dr. Barry Burchett examined the Plaintiff in October of 2013, and made several observations:

> Dr. Burchett observed that the claimant was stable at station and comfortable sitting and supine. She [wore] a splint on her right wrist, but this was removed for the examination. She had no tenderness, crepitus, warmth, swelling, or nodules in her hands or upper or lower extremities, and was able to make a fist to fully extend her hands. She was able to write, and could pick up coins with either hand without difficulty, but grip strength was only 4/5 bilaterally with poor effort. Tinel's sign was negative bilaterally. She had no tenderness and no sign of muscle spasms in the cervical or lumbar spine, and straight leg raising was negative sitting and supine. The claimant was able to stand on one leg at a time, walk on heels and toes, and perform tandem gait without difficulty, and she could walk 50 feet

---

[3] Plaintiff has not challenged the ALJ's finding that her depression was a non-severe impairment. Therefore, any challenge to that determination has been waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

9

without assistance. She only squatted to 45 degrees of knee flexion, complaining of pain in her knees and back. Sensation was intact, and reflexes were normal and symmetrical.

(Tr. 14). After making these observations, Dr. Burchett diagnosed Plaintiff with chronic low back pain, possible osteoarthritis of the knees, possible plantar fasciitis bilaterally, and possible right carpal tunnel syndrome. (Tr. 278; "Exhibit 4F", p. 4). However, Dr. Burchett noted that Plaintiff had "full range of motion" in her back. *Id.* Dr. Burchett also explained that the Plaintiff "walks without a limp" and has "full passive flexion of both knees," with "no noticeable swelling about the knees." *Id.* In summary and based on his examination, Dr. Burchett opined that Plaintiff has "exaggerate[d] a history of multiple problems." *Id.*

The Plaintiff also had x-rays of her back in 2011 and 2014, which revealed the following:

> X-rays of the claimant's lumbar spine in May of 2011 identified only mild degenerative disc disease, with disc space narrowing at L5-S1. (Exhibit 1F). X-rays of the lumbar spine in September 2014 revealed mild anterolisthesis of L4 on L5 and L3 on L4; disc space narrowing with osteophyte formation at L5-5 and L5-S1; mild facet hypertrophy; and straightening of the lumbar spine, possibly due to muscle spasm.

(Tr. 14). Both reading radiologists, Dr. David Westerfield and Dr. Paul Spicer, characterized the findings of the x-rays discussed above as "mild" degenerative changes. (Tr. 236; "Exhibit 1F", p. 3); (Tr. 310; "Exhibit 7F", p. 13). Similarly, regarding Plaintiff's alleged knee pain, x-rays of her knees in May of 2011 and again in September of 2014 found no acute process or abnormalities. *Id.*

Dr. William Watson, a neurologist, treated the Plaintiff in November of 2014 and diagnosed her with carpal tunnel syndrome. (Tr. 294; "Exhibit 6F", p. 4). To address this impairment, Dr. Watson prescribed a "wrist splint for Plaintiff's right wrist" and "1 month

[of] Aleve morning and night to reduce inflammation." *Id*. The medical records do not suggest any further treatment was necessary.[4]

In February of 2015, Plaintiff was examined by Frances Thom, APRN, who diagnosed her with carpal tunnel syndrome, back pain with radiculopathy, and bilateral knee pain. However, Ms. Thom noted that Plaintiff had a "normal mobility, no deformities, normal alignment," and "normal gait." (Tr. 304; "Exhibit 7F", p. 7). Ms. Thom also found that the Plaintiff retained "full joint motion" in her extremities. *Id*.

### b. Severity Determination

At the administrative hearing, the Plaintiff testified about her alleged limitations, claiming she had "problems with her back and knees," that "it hurts to sit, stand, or walk too long, or bend and stoop," and that her carpal tunnel syndrome causes her to "drop things sometimes." (Tr. 14). However, the ALJ found that there was "minimal evidence to support" Plaintiff's claims and highlighted the results of Plaintiff's x-rays, the lack of more detailed imaging such as CT or MRI, and the mild treatment prescribed. *Id*.

The ALJ considered the medical evidence in the record and determined that "the claimant's medically determinable impairments could produce some of the alleged symptoms." (Tr. 15). However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." *Id*.[5] In support of this determination, the ALJ highlighted the fact that the Plaintiff "has

---

[4] As discussed above, Dr. Watson indicated a possible diagnosis of arthritis and recommended "labs to rule out other confounding factors, bilateral wrist x-rays to assess RA affect, and referral to Rheum[atologist] for evaluation and treatment of RA." (Tr. 294; "Exhibit 6F", p. 4). However, the testing revealed no abnormalities or signs of arthritis. (Tr. 283-290; "Exhibit 5F", p. 1-8).

[5] The Plaintiff has not challenged the ALJ's discounting of her subjective description of the severity of her impairments, and the ALJ was free to do so. *See* 20 C.F.R. § 404.1529(c); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

continued to work approximately 25 hours per week since the alleged onset date, and is able to take public transit to get around." *Id.* Moreover, the ALJ noted that "[e]xaminations and imaging have been largely normal, with only mild degenerative changes in the back and no acute processes in her knees." *Id.* Similarly, the ALJ relied on Plaintiff's ability "to write and pick up coins with either hand on examination" and the fact that the neurologist, Dr. Watson, prescribed only "a splint and Aleve" and "did not refer the claimant for release surgery." *Id.*

A thorough review of the Plaintiff's medical records reveals no medically determinable impairments that would significantly limit her ability to perform basic work activities. In fact, the medical experts who treated and examined the Plaintiff did not opine that Plaintiff's functioning would be significantly limited by her impairments, nor did they impose any physical restrictions upon her. When "doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition," the Sixth Circuit "has regularly found substantial evidence to support a finding of no severe impairment." *Despins*, 257 F. App'x at 930 (citing *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001); *Maloney v. Apfel*, No. 99-3081, 2000 WL 420700 (6th Cir. Apr. 14, 2000); *Foster v. Sec'y of Health & Human Servs.*, No. 88-1644, 1990 WL 41835 (6th Cir, Apr. 11, 1990)).

The Plaintiff's critiques of the ALJ's decision do not warrant reversal. In regards to her carpal tunnel syndrome, Plaintiff attempts to argue that the ALJ should have found the condition severe because Dr. Watson found "significant for median nerve pattern deficits at carpal tunnel with thenar atrophy, weakness and decreased sensation in median finger distribution." (Doc. # 12-1 at 7 (citing Tr. 294)). Because the medical

records show that the Plaintiff had "nerve deficits, muscle atrophy, and decreased sensation in the fingers," Plaintiff claims that there was "certainly … more than a minimal effect on the [Plaintiff's] ability to do basic work activities." *Id.* Similarly, the Plaintiff claims that the fact that she has only "mild degenerative changes in [her] back" does not mean that the impairment is not severe. *Id.* In support of this argument, the Plaintiff states, "[c]ertainly, muscle spasms strong enough to straighten a spine would affect a person's ability to work." *Id.* at 8.

Without the support of objective medical evidence, Plaintiff's claims that her impairments "certainly" affect her ability to work are dubious. Although the medical evidence shows that Plaintiff was diagnosed with degenerative disc disease of the lumbar spine, carpal tunnel syndrome, and depression, the "mere existence of those impairments … does not establish that [she] was significantly limited from performing basic work activities for a continuous period of time." *Despins*, 257 F. App'x at 930.

It is the Plaintiff's "burden to prove the severity of her impairments." *Higgs*, 880 F.2d at 863. The "medical evidence in the record does not indicate" that Plaintiff's impairments "limited [her] ability to perform basic work activities." *Despins*, 257 F. App'x at 930. Instead, the medical evidence demonstrates that the Plaintiff had "normal mobility, no deformities, normal alignment," and "normal gait," despite her complaints of back and knee pain. (Tr. 304; "Exhibit 7F", p. 7). Similarly, the Plaintiff had no "swelling, atrophy, redness, warmth, or tenderness" in her hands or upper or lower extremities and the "range of motion of the joints of the fingers of both hands [were] normal," despite her complaints related to carpal tunnel syndrome. (Tr. 278; "Exhibit 4F", p. 4). Specifically, the Plaintiff was able to make a "fist with both hands," "all [of her] fingers can oppose,"

and she can "write" and "pick up coins with either hand without difficulty." *Id*.

Accordingly, the Plaintiff failed to meet her burden at Step Two – she did not present objective medical evidence establishing that she was significantly limited by her impairments. *Despins*, 257 F. App'x at 931. Therefore, substantial evidence supports the ALJ's determination that the Plaintiff's impairments were not "severe," as well as the conclusion that she was not disabled.

### III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled was supported by substantial evidence. Accordingly,

**IT IS ORDERED** as follows:

(1)   The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)   Plaintiff's Motion for Summary Judgment (Doc. # 12) is **DENIED**;

(3)   Defendant's Motion for Summary Judgment (Doc. # 13) is **GRANTED**; and

(4)   A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 20th day of April, 2017.



Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\SocialSecurity\MOOs\Lexington\16-165 Baker MOO.docx